UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MOBILIZATION FUNDING, LLC, a South Carolina limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>HALVORSON CONSTRUCTION GROUP, LLC; a Washington limited liability company; and CEC ELECTRICAL CONTRACTING, LLC, a Washington limited liability company,<br><br>Defendants. | Case No. 2:18-cv-01412-RAJ<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| HALVORSON CONSTRUCTION GROUP, LLC; a Washington limited liability company,<br><br>Third Party Plaintiff,<br><br>v.<br><br>JOHN and JANE DOE CHASE, individually and the marital community comprised thereof,<br><br>Third Party Defendants. | |

ORDER - 1

This matter comes before the Court on Plaintiff Mobilization Funding's Motion for Partial Summary Judgment (Dkt. #10). For the reasons stated below, the Court **DENIES** the Motion.

## I. BACKGROUND

Plaintiff Mobilization Funding ("Plaintiff" or "Mobilization Funding") is a South Carolina-based company that provides startup financing to construction subcontractors. Dkt. # 10 at 2. Defendant CEC Electrical Contracting, LLC ("CEC") is a Washington-based electrical subcontractor that was retained by Defendant Halvorson Construction Group, LLC ("Halvorson") to perform electrical work for three of Halvorson's construction projects (the "Halvorson projects"). Dkt. # 1 at ¶¶ 8-10.

In May 2017, Mobilization Funding agreed to advance CEC funds in connection with its work on the three Halvorson projects. Dkt. # 10 at 2. On May 10, 2017, CEC executed a promissory note in favor of Mobilization Funding in the amount of $1,904,761.91. Dkt. # 1 at ¶ 21; Dkt. # 11, Ex. D. As security for the loan, CEC also executed a security agreement, granting Mobilization Funding a security interest in all of CEC's personal property and accounts. Dkt. # 11, Ex. E. The security agreement specifically identifies CEC's "contracts receivable" for the three Halvorson contracts as part of the collateral. *Id.* CEC and Mobilization Funding also notified Halvorson of Mobilization Funding's security interest and on May 15, 2017, the three parties executed a "Directive of Funds for CEC Electrical Contracting, Inc." (the "Directive of Funds"), in which Halvorson agreed to pay CEC's receivables from the Halvorson projects directly to Mobilization Funding. Dkt. # 11, Ex. G. On October 17, 2017, Mobilization Funding also filed a UCC-1 financing statement with the Washington Department of Licensing identifying CEC as the debtor and describing the aforementioned collateral. Dkt. # 11, Ex. F.

As work on the projects progressed, Halvorson became aware that CEC was not

ORDER - 2

paying its vendors, suppliers, and employees. Dkt. #17 at ¶ 6. As a result, in February 2018, Halvorson advanced $65,000 to CEC to allow it to pay its employees. *Id.* During the course of CEC's contract, Halvorson also made other "advances to CEC to allow CEC to meet its payroll obligations." Dkt. # 17 at ¶¶ 22-23. Around the same time, Mobilization Funding agreed to advance CEC additional funds and on March 27, 2018, CEC executed a second promissory note in the amount of $908,705.47 in exchange for the loan. Dkt. # 11, Ex. H. CEC again executed a security agreement granting Mobilization Funding a security interest in CEC's "contract receivables" for the three Halvorson projects. Dkt. # 11, Ex. I.

In March 2018, the parties also modified the Directive of Funds, authorizing Halvorson to divert $130,000 of Mobilization Funding's collateral to Halvorson for the "payroll Halvorson funded to CEC . . . ." Dkt. # 11, Ex. J. According to Mobilization Funding, Halvorson "did not stop" with the initial $130,000 and continued to divert "significant amounts (likely hundreds of thousands of dollars) of CEC's receivables" to repay its "own unsecured loans." Dkt. # 10 at 5; Dkt. 11 at ¶ 11. On June 20, 2018, Halvorson terminated its contract with CEC because of CEC's ongoing default. Dkt. # 11 at ¶ 11; Dkt. # 17 at ¶ 20. Halvorson informed Mobilization Funding of its decision and engaged new electrical subcontractors to complete the work CEC was originally contracted to perform. Dkt. # 17 at ¶¶ 20-21.

On September 25, 2018, Plaintiff brought suit against CEC and Halvorson alleging, among other things, conversion, replevin, and fraud and requesting a declaratory judgment regarding Mobilization Funding's priority over CEC's contract receivables. Dkt. #1. On January 24, 2019, Plaintiff moved for partial summary judgment on the discrete issue as to whether its perfected security interest has priority over any claim Halvorson may make to CEC's account receivables. Dkt. # 10.

ORDER - 3

## II.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp.*, 477 U.S. at 325.  If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White v. McDonnell-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim").  The opposing party must present significant and probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

## III.  DISCUSSION

In its motion for summary judgment, Plaintiff argues that there is no genuine issue

ORDER - 4

of material fact as to Plaintiff's priority over CEC's receivables.  Dkt. #10 at 3.  Specifically, Plaintiff contends that it has a perfected security interest and because it is the only party with a perfected security interest, it has priority over any claim Halvorson may make as to CEC's receivables from the Halvorson contracts.  *Id.*

The Court must first consider whether Mobilization Funding has a perfected security interest.[1]  Under the Washington Uniform Commercial Code, "a security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral . . . ."  RCW 62A.9A-203.  A security interest is enforceable if: (1) value is given, (2) the debtor has a right in the collateral or power to transfer rights in the collateral to a secured party, and (3) the security agreement is authenticated.  RCW 62A.9A-203.

Here, it appears clear that Mobilization Funding's security interest attached to CEC's receivables from the Halverson projects.  In May 2017, Mobilization Funding agreed to finance CEC's mobilization expenses for the three Halvorson projects and CEC executed a Secured Promissory Note for $1,904,761.91.  Dkt. # 11, Ex. D.  This is sufficient to establish value given under RCW 62A.9A-203.  CEC had the right to assign its rights in the receivables from the Halvorson contracts, subject to the terms of the subcontracts.  Finally, CEC executed a security agreement granting Mobilization Funding a security interest in CEC's personal property, including receivables on the three Halvorson projects.  Dkt. # 11, Ex. E.

To perfect a security interest, Washington requires the secured party to file a financing statement identifying the debtor, secured party, and describing the collateral.

---

[1] In the absence of a federal statute or treaty, a federal court sitting in diversity generally applies the law of recognition of the state in which it sits. *Erie R. R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Under Washington law, the law of the jurisdiction in which the debtor is located governs questions of perfection and priority. RCW 62A.9A-301.  Because CEC is a Washington limited liability company, Washington law applies.

ORDER - 5

RCW 62A.9A-310; RCW 62A.9A-502. Mobilization Funding has provided evidence that it filed a UCC-1 financing statement with the Washington Department of Licensing on June 20, 2017, identifying itself as the secured party and describing the collateral outlined in the security agreement, including the receivables from the Halvorson projects. Dkt. # 11, Ex. F. The Court finds this is sufficient to establish that Mobilization Funding's security interest in CEC's contract receivables was perfected.

Thus, the only question remaining before the Court is whether Mobilization Funding's security interest has priority over any claim Halvorson may make to CEC's receivables. Dkt. # 10 at 7. Mobilization Funding argues that its security interest has priority because Mobilization Funding is the only party to have perfected its security interest. Dkt. # 10 at 8. But even if a party properly and promptly perfects its security interest, this protection is not absolute.

Under RCW 62A.9A-404(a)(1), an assignee's rights under a contract are subject to all the "terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contact." Here, Mobilization Funding's security interest in CEC's contract receivables is subject to the terms of CEC's subcontracts with Halvorson. The terms of the subcontracts provide that "[a]ny Assignee taking an assignment of payment otherwise due under [the Subcontract] shall be bound to the terms and limitations regarding payment contained in [the] Subcontract Agreement" and any assignee taking an interest in the subcontract "shall have no right to payment unless and until all sub-contractors, suppliers, employees, union trust funds, and taxing authorities have been paid and any claims of Contractor have been satisfied." Dkt. # 11, Ex. A at 11, Ex. B at 32, Ex. C at 71.

Halvorson argues that it is entitled to set off any amount owed to CEC (or its assignee Mobilization Funding) to cover CEC's existing obligations, pursuant to the terms of the subcontracts. Dkt. # 16 at 10. For example, Halvorson has presented

ORDER - 6

evidence that following CEC's default and termination, Halvorson engaged a new subcontractor to finish the work that CEC was contracted to perform. Dkt. # 17 at ¶ 21. Halvorson may be entitled to offset the costs of this work from any receivables it may owe to CEC. Dkt. # 11, Ex. A at 14. Given Halvorson's potential set-off claim, the Court finds there is still a genuine issue of material fact as to whether Mobilization Funding has priority over any claim to CEC's receivables from the Halvorson contracts.

The Court also cannot conclude as a matter of law that Halvorson waived its right to assert a set-off defense under the subcontracts, as Mobilization Funding contends. Dkt. # 18 at 3. Mobilization Funding cites two out-of-circuit state court cases where the courts held that an account debtor that erroneously pays the <u>assignor</u> after receiving notice of assignment waives any claim to a set-off, if the claim is raised for the first time after the assigned debt was paid. *Id*. (emphasis added) (citing *Nat. Trade Trust, Inc. v. Merrimac Const*., 524 N.W.2d 14, 16-17 (Minn. Ct. App. 1994); *Reading Co-Op. Bank v. Suffolk Constr. Co., Inc.*, 984 N.E.2d 776, 784-85 (Mass. 2013)).

But the evidence does not support Mobilization Funding's position. Here, it does not appear that Halvorson erroneously paid the assignor (CEC) the receivables. Instead, Mobilization Funding argues that Halvorson withheld funds due to CEC (and by assignment, Mobilization Funding) to cover its own "unsecured loans" to CEC. Dkt. # 10 at 5; Dkt. 11 at ¶ 11. Mobilization Funding does not provide any evidence that Halvorson erroneously paid the contract receivables to CEC without raising a set-off claim. To the extent that Mobilization Funding is arguing that Halvorson improperly withheld (or set off) funds from CEC's receivables to cover the funds it advanced to CEC for payroll expenses, that is not the discrete issue raised by this Motion.

Because there is still a material question of fact as to what Halvorson owes CEC under the subcontracts and the scope of any potential set-off claim under RCW 62A.9A-404, the Court finds this issue is inappropriate for summary judgment.

ORDER - 7

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment (Dkt. # 10) is **DENIED**.

DATED this 25th day of September, 2019.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER - 8