HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MOBILIZATION FUNDING, LLC, a South Carolina limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>HALVORSON CONSTRUCTION GROUP, LLC, a Washington limited liability company; and CEC ELECTRICAL CONTRACTING, LLC, a Washington limited liability company,<br><br>Defendants. | NO. 2:18-CV-01412-RAJ<br><br><br><br><br>DEFAULT JUDGMENT AGAINST DEFENDANT HALVORSON CONSTRUCTION GROUP, LLC |
| HALVORSON CONSTRUCTION GROUP, LLC, a Washington limited liability company,<br><br>Third Party Plaintiff,<br><br>v.<br><br>JOHN and JANE DOE CHASE, individually<br>and the marital community comprised thereof,<br><br>Third Party Defendants. | |

ORDER – 1

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Default Judgment. Dkt. # 37. Defendant Halvorson Construction Group, LLC ("Halvorson") has not filed a response. For the reasons below, the Court **DENIES** Plaintiff's motion without prejudice.

## II. BACKGROUND

Plaintiff Mobilization Funding ("Plaintiff") is a South Carolina-based company that provides startup financing to construction subcontractors. Dkt. # 10 at 2. Defendant CEC Electrical Contracting, LLC ("CEC") is an electrical subcontractor that was retained by Defendant Halvorson Construction Group, LLC ("Halvorson") to perform electrical work for three of Halvorson's construction projects (the "Halvorson projects" or "the projects"). Dkt. # 1 at ¶¶ 8-10.

On or about November 16, 2016, Halvorson entered into a lump sum electrical contract with CEC in connection with the construction of an apartment building in Redmond, Washington in the amount of $3,150,511. *Id.* ¶ 8. On or about February 7, 2017, Halvorson entered into a lump sum electrical construction contract with CEC in connection with the construction of a hotel in Redmond, Washington in the amount of $3,814,962. *Id.* ¶ 9. On or about April 3, 2017, Halvorson entered into a lump sum electrical construction contract with CEC for the renovation of a senior living facility in Seattle, Washington in the amount of $1,262,862. *Id.* ¶ 10.

On May 10, 2017, CEC executed a promissory note in favor of Plaintiff in the amount of $1,904,761.91 ("Note"). *Id.* ¶ 21. CEC also executed a security agreement on the same day ("Security Agreement"), as security for the Note. *Id.* ¶ 22. CEC granted Plaintiff a security interest in all of CECs inventory, equipment, personal property, and accounts, which included accounts-receivable under CEC's contracts with Halvorson ("Collateral"). *Id.* On October 17, 2017, Plaintiff filed a UCC Financing Statement with the Washington Department of Licensing identifying CEC as the debtor and describing

ORDER – 2

its Collateral. *Id.* ¶ 23. After CEC executed the Note and Security Agreement, Plaintiff made several advances of funds to CEC in the total amount of $1,904,761.91. *Id.* ¶ 24.

In May 2017, Plaintiff and CEC notified Halvorson that Plaintiff held a security interest in the accounts receivable under Halvorson's agreements with CEC. *Id.* ¶ 25. On May 15, 2017, Plaintiff, CEC, and Halvorson executive a document entitled "Directive of Funds for CEC Electrical Contracting, Inc.," ("Directive of Funds"), in which Halvorson agreed to pay the accounts receivable directly to Plaintiff on account of its security interest. *Id.* ¶ 26. In compliance with the Directive of Funds, Halvorson made 18 payments to Plaintiff between June 2017 and April 2018 in the total amount of $1,061,003.74. *Id.* ¶ 27.

Between March 2018 and June 2018, Halvorson loaned funds to CEC to fund CEC's operating expenses despite being on notice that Halvorson's receivables were assigned to Plaintiff. *Id.* ¶ 33. In May through July 2018, CEC submitted applications for payment to Halvorson ("Disputed Pay Applications"). *Id.* ¶ 34. Instead of paying Plaintiff the amounts due pursuant to the Disputed Pay Applications, Halvorson retained the funds and applied proceeds in satisfaction of its own loans to CEC. *Id.* ¶ 35.

Plaintiff alleges that Halvorson then attempted to induce Plaintiff to provide additional funding to CEC and to refrain from taking steps to protect its interests. *Id.* ¶ 36. Specifically, Plaintiff claims that Halvorson represented to Plaintiff that the amounts CEC would be paid on account of its pay applications materially exceeded the amounts payable to CEC on account of the same pay applications. *Id.* Plaintiff states that Halvorson represented to Plaintiff that CEC's April 2018 pay applications related to its projects with Halvorson would total at least $920,000. *Id.* After accounting for payments to third parties, this amount would result in a sizable payment to CEC, and in turn, to Plaintiff, according to Halvorson. *Id.* Halvorson's representations proved false, however, as the amount actually deemed payable to CEC on account of its April 2018 pay applications was significantly less than $920,000, and Halvorson did not pay any

ORDER – 3

portion of the amount payable on account of CEC's April 2018 pay applications to Plaintiff. *Id.* ¶ 37.

On or about June 25, 2018, Halvorson terminated CEC on all of the projects for which CEC had been contracted. *Id.* ¶ 39. As of the of termination date, the unpaid balance under the contracts was "more than sufficient to cover the costs of the remaining electrical work to be performed on the projects." *Id.* ¶ 42. Following the termination date, Halvorson retained control of CEC's personal property used at the locations of the projects. *Id.* ¶ 44.

On September 25, 2018, Plaintiff brought suit against CEC and Halvorson alleging, among other things, conversion, replevin, and fraud and requesting a declaratory judgment regarding Plaintiff's priority over CEC's contract receivables. Dkt. #1. Halvorson was properly served with the complaint on October 1, 2018. Dkt. # 8. Three weeks later, Halvorson filed an answer, cross claim, and third party complaint against CEC for breach of contract and fraud. Dkt. # 9. CEC did not file any response despite being properly served. Dkt. # 22. On August 8, 2019, Plaintiff filed a motion for default against CEC. *Id.* The Court granted the motion. Dkt. # 25.

On August 19, 2019, Halvorson petitioned King County Superior Court for the appointment of a general receiver. Dkt. # 28 at 2. The petition was granted and a general receiver ("Receiver") was appointed. *Id.* All of Halvorson's real and personal property was assigned to the Receiver. *Id.* Based on the appointment of a Receiver and, effectively, a change in who controls and directs Halvorson's decisions, Halvorson's counsel moved to withdraw as counsel from this matter. *Id.* at 3.

On March 6, 2020, the Court granted Halvorson's counsel's motion to withdraw as counsel in this matter. Dkt. # 34. However, no substitute counsel had appeared for Halvorson. *Id.* at 2. Noting that "a corporation may appear in the federal courts only through licensed counsel," the Court ordered Halvorson to have new counsel enter an appearance on its behalf by March 20, 2020. *Id.* (citing *Rowland v. California Men's*

ORDER – 4

*Colony*, 506 U.S. 194, 201–02 (1993)).  The Court advised Halvorson that if it failed to obtain substitute counsel by that date, "the Court may strike the answer and claims of Halvorson and enter default."  *Id.*

Halvorson failed to have substitute counsel appear on its behalf in this matter by the March 20, 2020 deadline or anytime thereafter.  Consequently, on August 10, 2020, the Court struck Halvorson's answer and claims and entered default against Halvorson.  Dkt. # 36.  On September 10, 2020, Plaintiff filed the pending motion for default judgment against Halvorson.  Dkt. # 37.

### III.     LEGAL STANDARD

At the default judgment stage, a court presumes all well-pleaded factual allegations are true, except those related to damages.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *see also Fair House. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  The entry of default judgment under Rule 55(b) is "an extreme measure," and disfavored cases should be decided on their merits whenever reasonably possible.  *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1170 (9th Cir. 2002); *also see Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189 (9th Cir. 2009).  Where there is evidence establishing a defendant's liability, a court has discretion, not an obligation, to enter a default judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see also Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988).  Since deciding for or against default judgment is within a court's discretion, a defendant's default does not de facto entitle a plaintiff to a court-ordered judgment.  *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1210-11 (W.D. Wash. 2014).

In addition, Federal Rule of Civil Procedure 55(b)(1) permits a court to enter default judgment when a plaintiff's claim "is for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b)(1).  In moving a court for default judgment, a plaintiff must submit evidence supporting the claims for a particular sum of damages.  Fed. R. Civ. P. 55(b)(2)(B).

ORDER – 5

## IV. DISCUSSION

In deciding a motion for default judgment, a court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Weighing all the *Eitel* factors, the Court finds good cause to grant Plaintiff's motion for default judgment.

### A. Possibility of Prejudice to Plaintiff

Without a judgment, Plaintiff will likely be prejudiced. This factor favors default judgment because if Plaintiff's motion is not granted, it "will likely be without other recourse for recovery." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

### B. Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

These two factors are often analyzed together. Curtis, 33 F. Supp. 3d at 1211. A court must determine if the allegations in the complaint are sufficient to state a claim that supports the relief sought. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

The Court finds that these factors weigh in favor of default judgment. Plaintiff's claim is well-pleaded and supported by evidence. Plaintiff submits evidence in the form of executed contracts between the parties, the promissory notes, and pay applications submitted to Halvorson by CEC. Dkt. # 38, Ex. A-B; Dkt. # 39, Ex. A-W.

For a conversion claim, Plaintiff must show that a "person intentionally interfere[d] with chattel belonging to another, either by taking or unlawfully retaining it, thereby depriving the rightful owner of possession." *Alhadeff v. Meridian on Bainbridge Island, LLC*, 220 P.3d 1214, 1223 (Wash. 2009). Plaintiff alleges that it had a prior perfected lien on the Halvorson receivables and that Halvorson knew of this prior

ORDER – 6

interest. *Id.* at 8.  Pursuant to the Directive of Funds, Halvorson was required to deliver the Halvorson receivables to Plaintiff.  *Id.*  Based on well-pleaded facts, Plaintiff demonstrates that Halvorson committed conversion by intentionally and unlawfully retaining the receivables.

The Court also finds that Plaintiff's allegations regarding fraud and misrepresentation against Halvorson are well-pleaded.  Plaintiff's factual allegations support each element of a fraud claim:  (1) Halvorson represented to Plaintiff that it would make a payment; (2) the representation was material; (3) it was also false; (4) Halvorson knew it was false; (5) Halvorson intended that Plaintiff act on its representation by not seeking further security on payment; (6) Plaintiff did not know of the falsity; (7) Plaintiff relief on the truth of the representation and did not take further steps to secure payment; (8) Plaintiff had a right to rely on it; and (9) Plaintiff suffered monetary damages as a result.  *See Adams v. King Cty.*, 192 P.3d 891, 902 (Wash. 2008).

### C. Sum of Money at Stake

The amount of money at stake here is $911,348.36, plus prejudgment interest.  Because this amount is significant, it would normally weigh against default judgment.  However, given the size and scope of the construction projects and amounts contractually agreed upon by the parties, this amount is not unreasonable.  The Court finds that this factor is neutral.

### D. Possibility of a Dispute Concerning Material Facts

In a prior ruling, the Court denied Plaintiff's motion for partial summary judgment after finding a dispute concerning material facts.  *See* Dkt. # 31.  Because Halvorson's pleadings have been stricken, the Court does not consider the content of Halvorson's response in consideration of the pending motion.  The Court recognizes, however, that its prior order, at minimum, confirms that there exists a possibility of a dispute of material facts.  This factor therefore weighs against default judgment.

ORDER – 7

### E. Excusable Neglect

On the sixth factor, Halvorson's neglect is inexcusable. Halvorson had been properly served. It failed to obtain substitute counsel as ordered by this Court's order by the March 20, 2020 deadline, or anytime thereafter. Dkt. # 34. This factor weighs in favor of default judgment.

### F. Decision on the Merits

Finally, with respect to the seventh factor, "[a]lthough this factor almost always disfavors the entry of default judgment, it is not dispositive." *Curtis*, 33 F. Supp. 3d 1200 at 1213 (internal quotation marks omitted). Given Halvorson's inexcusable failure to obtain new counsel and appear, a decision on the merits is impossible. This factor, therefore, weighs in favor of default judgment.

On balance, the Court finds that the *Eitel* factors in favor of default judgment.

### G. Requested Judgment

"A plaintiff must . . . prove all damages sought in the complaint." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1046 (N.D. Cal. 2010). In determining damages, a court can rely on declarations submitted by a plaintiff. *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1046 (N.D. Cal. 2010).

Plaintiff requests damages in the amount of $911,348.36. Dkt. # 37 at 10. Plaintiff alleges that this amount is the principal amount left owing under the promissory notes between CEC and Plaintiff. Dkt. # 38 ¶ 4. Plaintiff submitted the two promissory notes executed between CEC and Plaintiff for the amounts of $1,904,761.91 to be paid by October 30, 2017, and $908,705.47 to be paid by May 29, 2018. Dkt. # 38, Ex. A-B. Plaintiff indicated that, between June 2017 and April 2018, Halvorson made 18 payments to Plaintiff in the total amount of $1,061,003.74. Dkt. # 37 ¶ 10. Because the full payment was not submitted by the notes' respective maturity dates, Plaintiff states that the loans were in default. Dkt. # 38 ¶ 3.

Plaintiff also submits as evidence multiple payment applications to Halvorson

ORDER – 8

regarding amounts owed by Halvorson, as well as documentation of payments received by Halvorson from third parties in the construction projects. *See* Dkt. # 39, Ex. A-W. In its March 2018 pay applications, CEC sought $733,301.41 from Halvorson. Dkt. 37 at 6. In its April 2018 pay applications, CEC sought $738,469.37 from Halvorson. *Id.* In CEC's May and June 2018 pay applications, CEC requested $339,743.60 from Halvorson. *Id.* Plaintiff asserts that Halvorson paid Plaintiff only $187,591.75 of the receivables from March through June 2018. *Id.*; Dkt. # 38 ¶ 5.

Plaintiff fails, however, to provide evidence supporting the calculation of $911,348.36 in damages. Presumably the amount owed to Plaintiff under the notes subtracted by the amounts paid by Halvorson would yield the remaining principal balance due, but the numbers proffered by Plaintiff do not result in the amount requested. The Court thus concludes that Plaintiff's evidence is insufficient to calculate a sum certain. Without more, the Court cannot grant the requested damages. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (holding that "[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.")

### V.   CONCLUSION

For the reasons stated above, the Plaintiff's Motion for Default Judgment is **DENIED without prejudice to refiling.** Plaintiff may file an amended motion within **thirty (30) days** of this Order.

Dated this 14th day of September, 2021.

The Honorable Richard A. Jones
United States District Judge

ORDER – 9